UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

STEPHEN AGUIAR,

        Plaintiff,

v.

WARDEN M. RECKTENWALD, et al.,

        Defendants.

CIVIL ACTION NO. 3:13-CV-02616

(MANNION, D.J.)
(MEHALCHICK, M.J.)

**MEMORANDUM**

Pending before this Court are various motions filed by *pro se* Plaintiff Stephen Aguiar. Specifically, Plaintiff has filed a motion for entry of default judgment (Doc. 29), a motion to file a second amended complaint (Doc. 37), a motion to strike his response to Defendants' answer (Doc. 38), a motion to strike (Doc. 49) defendants' summary judgment motion (Doc. 45), a motion to compel (Doc. 40) and a "renewed" motion to compel (Doc. 48). For the reasons provided herein, Plaintiff's motion for entry of default judgment (Doc. 29) and motion to file a second amended complaint (Doc. 37) are **DENIED**. Plaintiff's motion to strike (Doc. 38), motions to compel (Doc. 40; 48), and motion to strike defendants' motion for summary judgment (Doc. 49) are **GRANTED**.

    **I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Stephen Aguiar ("Aguiar"), a prisoner currently incarcerated at the Federal Correctional Institution in Petersburg, Virginia, filed the instant *Bivens*[1] action on June 13, 2013 in the United States District Court for the District of Columbia. (Doc. 1). Aguiar filed an

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

amended complaint on June 18, 2013. (Doc. 5). On October 1, 2013, the case was transferred to the United States District Court for the Middle District of Pennsylvania. (Doc. 12). The incidents that give rise to the complaint occurred while Aguiar was incarcerated at the Federal Correctional Institution in Allenwood, Pennsylvania ("FCI- Allenwood"). In his amended complaint, Aguiar alleges that the Bureau of Prison ("BOP") staff at FCI- Allenwood violated his constitutional rights by improperly imposing disciplinary sanctions on him and directing Facebook employees to disable his Facebook account as a result of his allegedly improper use of the Trust Fund Limited Inmate Computer System ("TRULINCS"), a computer system that monitors inmates' electronic messages. (Doc. 1). Specifically, he names as Defendants Warden M. Recktenwald, Associate Warden Jeff Butler, Captain C. Bergen, Lieutenant Jim Lyons, Margie Cook, and current BOP employees, as well as "John Doe" at Facebook. (Doc. 1).

Defendants did not file a response to Aguiar's amended complaint by the Court imposed October 22, 2013 deadline. (Doc. 9). As a result of Defendant's failure to respond, this Court issued a show cause order on January 3, 2014 directing the Defendants to show cause as to why they had not done so. (Doc. 15). On January 24, 2014, Aguiar filed a Motion for Default Judgment. On March 6, 2014, the Defendants responded to the Court's show cause order, requesting that this Court deny Aguiar's motion for default judgment, as the named defendants were not aware of this case due to improper service issues arising from the transfer of Aguiar's case from the District of Columbia to the Middle District of Pennsylvania. (Doc. 21). On March 17, 2014, this Court issued a Report and Recommendation, recommending that Defendants be granted thirty (30) days to file a response to Aguiar's amended complaint. (Doc. 23). An Order was entered on April 24, 2014, adopting the Report and Recommendation in full and referring the case back to this Court for pretrial management. (Doc. 25). On April 30, 2014,

this Court entered an Order setting the answer deadline for May 24, 2014. (Doc. 28). Defendants filed an answer to Aguiar's amended complaint on May 27, 2014. (Doc. 31).

Presently before the Court are six (6) motions filed by Aguiar. In particular, Aguiar has filed a motion for default judgment on the basis that Defendants did not respond to his amended complaint. (Doc. 29). Aguiar has filed a motion to strike his response to Defendants' answer filed on May 27, 2014. (Doc. 38). Aguiar has filed a motion for leave to file a second amended complaint in order to add "Facebook Incorporated" and the "Federal Bureau of Prisons" as defendants as well as assert new theories of liability. (Doc. 37). Defendants have filed a brief in opposition to Aguiar's motion seeking leave to file a second amended complaint. (Doc. 41). Aguiar has filed two motions to compel dated July 24, 2014 (Doc. 4) and September 9, 2014 (Doc. 48), of which the Defendants have objected to in a corresponding brief in opposition (Doc. 41) and reply brief (Doc. 52). Finally, Aguiar has filed a motion to strike Defendants' motion for summary judgment. (Doc. 49). Defendants have filed a brief in opposition to Aguiar's motion to strike. (Doc. 51). As these motions are ripe for disposition, this Court addresses each motion in turn.

**II.** **DISCUSSION**

    A. MOTION FOR DEFAULT JUDGMENT AND MOTION TO STRIKE

Aguiar filed a motion for default judgment on May 7, 2014 (Doc. 29), asserting that Defendants failed to file an answer to his amended complaint in accordance with this Court's Report and Recommendation and corresponding Order. At the outset, this Court notes that Aguiar's motion for default judgment was premature, as Defendants were given until May 24, 2014 to file a response. (Doc. 28). This Court also notes that while Defendants filed their answer on May 27, 2014, three days after the May 24th deadline, it is still deemed timely filed.

Specifically, pursuant to Rule 6 of the Federal Rules of Civil Procedure, the Court may extend the last day for filing "to the first accessible day that is not a Saturday, Sunday or legal holiday." Fed.R.Civ.P. 6(a)(3). May 24, 2014 was the Saturday before Memorial Day, a legal holiday. As such, Defendants had until May 27, 2014 to file their answer. Because Defendants timely filed their answer on May 27, 2014, (Doc. 31), this Court will deny Aguiar's motion for default judgment (Doc. 29).

Upon the filing of Defendants' answer, Aguiar filed a "Reply to Defendants' Answer" (Doc. 32). Subsequently, Aguiar filed a motion to strike this response to Defendants' answer (Doc. 38), dated May 27, 2014. The Court will grant this unopposed motion.

B. MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT[2]

Aguiar has filed a motion (Doc. 37), requesting that this Court to grant him leave to file a second amended complaint, in which he seeks to add Facebook Incorporated and the BOP as defendants. (Doc. 37). In addition to his *Bivens* claim, Aguiar's amended complaint also asserts additional claims that the BOP violated his rights under the Privacy Act by disclosing information contained in his record to Facebook; that Facebook Incorporated, Facebook employees and BOP employees conspired to disable Aguiar's Facebook account; that the BOP intentionally interfered with the contractual relationship between Aguiar and Facebook; and that Facebook breached its contract with Aguiar by disabling his account. (Doc. 37).

---

[2] Among the District Courts within the Third Circuit, a motion to amend is generally treated as a nondispositive matter, subject to decision by the magistrate judge. *See Stridiron v. Mobile Paint Mfg Co. of Delaware*, No. CIV. 2002/44, 2003 WL 23198843, at *1 (D.V.I. Dec. 15, 2003); *Thomas, D.M.D. v. Ford Motor Co.*, 137 F.Supp.2d 575, 579, (D.N.J.2001); *Fishbein Family Partnership v. PPG Indust., Inc.*, 871 F.Supp. 764, 769 n. 4 (D.N.J.1994); *see also Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir.1993).

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, the Court "should freely give leave [to amend a complaint] when justice so requires." Fed.R.Civ.P. 15(a)(2). While this "embodies a liberal approach to amendment," the right to amend is not absolute. *Dole v. Arco Chemical Co.*, 921 F.2d 484, 486 (3d Cir. 1990). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))(citations omitted). An amendment to a complaint is deemed "futile" if it would fail to state a claim upon which relief could be granted. *Glassman*, 90 F.3d at 623 (citations omitted). In assessing futility, the court applies the same standard of legal sufficiency as it applies under Rule 12(b)(b) of the Federal Rules of Civil Procedure for failure to state a claim. For the following reasons, this Court will deny Plaintiff's motion for leave to file a second amended complaint.

1. **Privacy Act Claim Against Facebook Incorporated**

Count One of Aguiar's proposed amended complaint alleges that the BOP willfully disclosed information contained in his record to Facebook Incorporated in violation of the Privacy Act. 5 U.S.C. § 552a(a). The Privacy Act concerns "the government's collection and dissemination of information and maintenance of its records." *See Kates v. King*, 487 Fed.Appx. 704, 707 (3d Cir. 2012) (quoting *Perry v. Bureau of Prisons*, 371 F.3d 1304, 1304-05 (11th Cir. 2004)). Specifically, the Act authorizes an individual to bring a civil action against a government agency that discloses "any record which is contained in a system of records by any means of communication to any person, or to another agency." 5 U.S.C. § 552a(b). A "record" is defined as:

any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4). Further, that record must be held in a "system of records," defined as a "group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

Here, this Court finds that Aguiar has not set forth a claim under the Privacy Act for which relief could be granted. Aguiar claims that the BOP "intentionally and willfully disclos[ed] to Facebook information that was contained in a record within systems of records." (Doc. 37). However, the existence of Aguiar's Facebook account is not a "record" as defined by the Privacy Act. Specifically, the proposed second amended complaint alleges that a prison official informed Facebook by e-mail that Aguiar maintained an active Facebook account through a third party in violation of BOP policy and Facebook's Terms and Conditions, and thus requested that it be removed. No personal information pertaining to Aguiar contained in a BOP record, such as Aguiar's criminal history, medical history, employment history or even copies of his communications through TRULINCS, was disclosed to Facebook Incorporated. The prison administrator's disclosure to Facebook that Aguiar maintained an active Facebook account with the assistance of a third party is not a record contained within a system of records as defined by the Privacy Act; rather it is information that is not maintained by the BOP in its system of records. As such, there is nothing Aguiar could allege in his complaint that would

entitle him to relief under the Privacy Act. Accordingly, this Court will deny Aguiar leave to amend his complaint to include Privacy Act violations, as such an amendment would be futile.

### 2. *Bivens* Claim Against BOP and Facebook Incorporated

Count Three of Aguiar's proposed amended complaint alleges a constitutional violation against the BOP and Facebook under *Bivens*, as Aguiar seeks money damages against the BOP and Facebook for violating his First Amendment rights. (Doc. 37). In response to Aguiar's request to add the BOP as a defendant to his *Bivens* action, Defendants have filed a brief in opposition in which they argue that Aguiar cannot bring a *Bivens* action against the BOP in the absence of a congressional waiver. (Doc. 39). Defendants request that this Court deny Aguiar's motion to amend, as allowing him to amend his complaint to add an improper party would be ultimately futile and a waste of judicial resources. (Doc. 39).

With respect to the proposed addition of the BOP as a defendant to Aguiar's *Bivens* claim, sovereign immunity bars claims against the United States and its agencies, including the BOP, unless Congress has specifically waived such immunity. *United States v. Mitchell*, 463 U.S. 206, 215–16 (1983); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (sovereign immunity is not merely a defense to an action against the United States, but a jurisdictional bar). The complaint asserts no such waiver with respect to Aguiar's *Bivens* claims. *See Malone v. Bowdoin*, 369 U.S. 643, 645 (1962) (claimant must plead source of waiver of sovereign immunity). Because the proposed amended complaint fails to state a plausible claim for relief under *Bivens* against the BOP, this Court must deny Aguiar leave to amend his complaint to add the BOP as a defendant.

While Defendants do not address it in their brief in opposition, Aguiar has also sought leave to include Facebook Incorporated as a potential defendant to his *Bivens* action. The United States Court of Appeals for the Third Circuit, relying on Supreme Court precedent, has

repeatedly held that a plaintiff cannot bring a *Bivens* action against a private corporation or its employees. See *Bob v. Kuo,* 387 Fed.Appx. 134, 136 (3d Cir. 2010) (citing *Corr. Servs. Corp. v Malesko*, 534 U.S. 61, 70–74 (2001)); *see also Perez–Barron v. United States*, 480 Fed.Appx. 688, 690 (3d Cir. 2012). However, the inquiry does not end here. The allegations in Aguiar's proposed amended complaint could satisfy the federal actor requirement of a *Bivens* claim if he could establish that Facebook Incorporated acted as a federal actor for prison officials in depriving him of his constitutional rights.

There are three tests a court may apply to determine whether a private party may be regarded as a federal actor: (1) the public function test, (2) the close nexus test, or (3) the symbiotic relationship test. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 801 (3d Cir. 2001). "[T]he object of the inquiry is to determine whether a private entity has exercised powers traditionally reserved exclusively to the government." *Id.* The public function test looks to whether "the government is effectively using the private entity in question to avoid a constitutional obligation or to engage in activities [exclusively] reserved to the government." *Id.* at 802-02. The close nexus test requires that the government exercise "coercive power or [provide] such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [government]." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The symbiotic relationship test requires the government to have "'insinuated itself into a position of interdependence' with the defendant. *Brown*, 250 F.3d at 803 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)).

Here, Facebook Incorporated's only act, according to the proposed amended complaint, was to comply with a request from Defendant Margie Cook to disable Aguiar's Facebook account. This singular act of compliance with the BOP's request in no way characterizes

8

Facebook as a federal actor for a *Bivens* claim under any of the three tests described above. *See Davis v. Holder*, 994 F.Supp.2d 719, 726 (W.D. Pa. 2014) (citing *Smith v. Kitchen*, 156 F.3d 1025, 1928-29 (10th Cir. 1997). There is nothing Aguiar could allege here that would support a claim that Facebook Incorporated, a corporate defendant, is a federal actor. Because Facebook Incorporated cannot be classified as a federal actor, the proposed amended complaint fails to state a plausible claim for relief under *Bivens* against Facebook Incorporated and any further amendment would be futile. Therefore, the Court will deny Aguiar's motion for leave to amend this claim.

### 3. Breach of Contract Claim Against Facebook

Aguiar asserts a state law breach of contract claim against Facebook. However, as this Court has determined that amendment of Aguiar's complaint to include the aforementioned *Bivens* Claim and Privacy Act claim against Facebook to be futile, Aguiar has failed to assert a meritorious federal claim against Facebook. In addition, a court may "decline to exercise jurisdiction over pendant state law claims .... [where] all federal claims against certain defendants have been dismissed leaving only a pendant state law claim against them, which lacks a common nucleus with the remaining federal claims against the other defendants." *Bennett v. Washington*, No. CIV.A. 11-176, 2013 WL 3716520, at *7 (E.D. Pa. July 15, 2013); citing *Singleton v. Pittsburgh Bd. of Educ.*, Civ. A. No. 11–1431, 2012 WL 4068381, at *13 (W.D.Pa. Aug. 24, 2012) (citing *Kis v. Cnty. of Schuylkill*, 866 F.Supp. 1462, 1480 (E.D.Pa.1994)). Accordingly, a court may deny a plaintiff leave to amend his complaint to assert state law claims over which the court has declined to exercise supplemental jurisdiction. *See Folk v. Pa. Dep't of Educ.*, Civ. A. No. 10–7377, 2012 WL 2282849, at *6 (E.D.Pa. June 14, 2012) (citing Fed.R.Civ.P. 15(a)(2)). As this Court will deny Aguiar leave to amend his

complaint to add his proposed federal claim against Facebook, the Court will decline to exercise supplemental jurisdiction and grant Aguiar leave to add a state law claim against Facebook Incorporated.

### 4. Tortious Interference Claim Against BOP Defendants

In his proposed amended complaint, Aguiar also asserts a state law claim against the BOP employees for contract interference. Specifically, he asserts that the BOP Defendants "intend[ed] to disrepute the contractual relationship between [him] and Facebook." (Doc. 37). "An action for tortious interference with an actual or prospective contractual relationship requires a showing of: (1) an actual or prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damages resulting from the defendant's conduct." *Perma-Liner Indus., Inc. v. U.S. Sewer & Drain, Inc.*, 630 F. Supp. 2d 516, 524 (E.D. Pa. 2008). Here, assuming that Aguiar entered into a contractual relationship with Facebook, and that BOP employees purposefully intended to prevent any contractual relationship with Facebook from continuing, there is nothing Aguiar could allege that would satisfy the third and fourth requirements of a tortious interference claim. With respect to the third requirement, the record reveals that the BOP official was justified in effectuating the removal of Aguiar's Facebook account. Specifically, an e-mail sent to Facebook disclosed that "[t]he Federal Bureau of Prisons is taking pro-active steps in curbing inmate use of Social Media [because] [t]his activity is a breach of security within our prisons, and has the potential to be damaging to persons in the community, particularly minors." (Doc. 41, at 7). As such, there are no facts Aguiar could allege in an amended complaint that would establish an absence of privilege or justification on the part of the defendant. Moreover, with respect to the fourth

requirement, there is nothing Aguiar could allege in an amended complaint to establish pecuniary loss resulting from the removal of his Facebook account. As such, amendment of Aguiar's complaint to include a tortious interference claim is clearly futile as there is nothing Aguiar could allege that would establish both unjustified action taken on the part of the defendant in prompting the removal of his Facebook account, and pecuniary loss occasioned by the alleged interference.

### 5. Civil Conspiracy Claim Against All Defendants

In his proposed amended complaint, Aguiar also adds a common law claim for civil conspiracy against all Defendants. "A plaintiff charging civil conspiracy must . . . 'plead or develop a[ ] separate underlying intentional or criminal act that can support a civil conspiracy claim.'" *Accurso v. Infra-Red Servs., Inc.,* No.13-7509, 2014 WL 2218128, at *12 (E.D. Pa. May 28, 2014) (quoting *Goldstein v. Phillip Morris, Inc.*, 854 A.2d 585, 590 (Pa. Super. Ct. 2004)). However, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Pelagatti v. Cohen* 536 A.2d 1337, 1341-41 (Pa. Super. Ct. 1987). Indeed, the Third Circuit has held that a civil conspiracy cause of action requires a finding that the underlying tortious conduct occurred. Because the Court, as discussed above, will deny any amendment of the complaint to include a tortious interference claim, it will also deny amendment to include a civil conspiracy claim. *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 405–06 (3d Cir. 2000).

### C. MOTIONS TO COMPEL

Aguiar has filed two separate motions to compel. (Doc. 40; 48). In particular, he seeks to have this Court order Defendants to produce certain documents he requested on June 9, 2014, and on July 2, 2014. He also seeks responses to his requests for admission and interrogatories

submitted to Defendants on July 2. (Doc. 40; 48). By way of procedural background, the discovery deadline was initially set for June 24, 2014. (Doc. 28). On June 9, 2014, Aguiar mailed Defendants' counsel of record a request for the production of the following documents:

1. All Documents in the possession of your clients and/or Bureau of Prisons Officials related to, but not limited to, any and all written documents, internal memoranda, verbal recordings, electronic communications, between . . . BOP Allenwood employee(s) and any Facebook Agent, employee or Facebook website regarding information relevant to this case.

2. Any other information that would have any important relevance to this case.

3. Please provide me with any reference to TRULINCS published in the Federal Register including any referen[c]e to routine uses of that system of records.

(Doc. 40, at 6).

Defendants objected to the June 9, 2014 request as untimely in that it did not afford Defendants thirty days to respond to such a request as required by Rule 34 and still comply with the June 24th discovery deadline. (*See* Doc. 40).As such, the Court, on the motion of Aguiar, extended the discovery deadline to July 25, 2014 so that Defendants could timely respond to Aguiar's discovery request. (Doc. 35). On July 2, 2014, Aguiar sent Defendants' counsel of record another discovery request in which he sought the production of documents initially requested on June 9th as well as admissions and interrogatories. (Doc. 40). Again, Defendants objected to Aguiar's discovery request on the basis that it was untimely under Rule 34. However, on July 17, 2014, Defendants responded to Aguiar's June 9, 2014 request with

general objections[3] and a copy of an e-mail sent from a Defendant Cook, a BOP employee, to Facebook regarding Aguiar's active Facebook account. Defendants did not provide responses to Aguiar's requests for admissions and interrogatories. On July 23, 2014, Aguiar sent Defendants' counsel of record a letter which challenged the completeness of the response provided, and specifically requested: (1) documents concerning national or local policy prohibiting inmate's use of social media; (2) any reply Defendant Cook received from Facebook in her e-mail; (3) any written or electronic communications Defendant Cook had with prison officials pertaining to Aguiar's Facebook account; and (4) the entire contents of Aguiar's disciplinary file. (Doc. 48).

Aguiar's motions to compel arise from Defendants' response to Aguiar's discovery requests; namely his requests for production, admissions, and interrogatories. Defendants contend that Aguiar now seeks to obtain documents that he did not initially request after the discovery deadline has passed. (Doc. 52).While a review of the record reveals that Aguiar's request for documents was, on its face, vague and overbroad, the Court notes that Aguiar narrowed the scope of his request on July 23rd, before the conclusion of the July 25th discovery deadline to include the following: policies prohibiting inmates from using social media; any reply Defendant Cook received from Facebook with respect to removing Aguiar's Facebook account; written or electronic communications between Defendant Cook and prison officials pertaining to Aguiar's Facebook account; and Aguiar's disciplinary file. (Doc. 48). Moreover,

---

[3] Defendants generally objected to Aguiar's discovery requests on the basis that the documents were: (1) not in their possession; (2) privileged; (3) publically available; and (4) not relevant.

Aguiar submitted his requests for admission and interrogatories before the expiration of the July 25th discovery deadline. Considering the broad discretion this Court has to manage discovery disputes and the underlying objective of discovery to promote truth-seeking to the extent it is not unduly burdensome, this Court will grant Aguiar's motion to compel and extend the time for completion of discovery to thirty (30) days from the date of the Order accompanying this Memorandum. Defendants are directed to respond to Aguiar's discovery requests within thirty (30) days of the entry of this Order. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982)("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court."). However, this response should be limited to providing responses to those specific requests highlighted in the motion papers that contain actual discoverable information; namely the request for production from July 23rd, and the requests for interrogatories and admissions dated July 2nd.

### D. MOTION TO STRIKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Finally, Aguiar has filed a Motion to Strike Defendants' Motion for Summary Judgment due to his pending motions to compel and his motion for leave to file a second amended complaint. (Doc. 49). Defendants argue in their reply brief that Aguiar's motion to strike is meritless as he failed to comply with this Court's August 25, 2014 dispositive motion deadline and thus, should be denied. As herein discussed, this Court has granted Aguiar's motions to compel, but has denied him leave to file an amended complaint. In light of this decision, this Court will grant Aguiar's Motion to Strike without prejudice to either party filing a dispositive motion within thirty (30) days following the close of discovery in this matter, together with briefs in support thereof. Any briefs in opposition and reply briefs should be timely filed in accordance with the Local Rules.

### III.    CONCLUSION

For the foregoing reasons, Aguiar's motion for default judgment (Doc. 29), and motion to amend his complaint (Doc. 37) are **DENIED.** Aguiar's motions to compel (Doc. 40; 48), motion to strike his response (Doc. 38), and motion to strike Defendants' motion for summary judgment (Doc. 49), are **GRANTED**.

An appropriate Order will follow.


**Dated: November 12, 2014**                                  *s/ Karoline Mehalchick*
                                                                                   **KAROLINE MEHALCHICK**
                                                                                   **United States Magistrate Judge**