# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN AGUIAR, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:13-2616 |
| v. | : | (MANNION, D.J.) |
| WARDEN M. RECKTENWALD, *et al.*, | : | (MEHALCHICK, M.J.) |
| | : | |
| Defendants | | |

## MEMORANDUM

Pending before the court is the report of Judge Karoline Mehalchick, which recommends that the defendants' motion for summary judgment be granted. (Doc. 79). The plaintiff did not file objections to the report. Upon review of the report and related documents, the report will be **ADOPTED IN FULL**.

## I. BACKGROUND

The factual background and procedural history of the case is set forth in detail in Judge Mehalchick's report and is adopted herein. On June 13, 2013, the *pro se* plaintiff, Stephen Aguiar ("Aguiar" or "Plaintiff"), filed the instant *Bivens*[1] action pursuant to 28 U.S.C. §1331. (Doc. 1). On June 18, 2013, the plaintiff filed an amended complaint. (Doc. 5). Plaintiff essentially argues that prison officials at the Federal Correctional Institution at Allenwood

---

[1] Bivens v. Six Unknown Named Agents of the FBI, 403 U.S. 388 (1971)

in White Deer, Pennsylvania ("FCI-Allenwood"), interfered with his use of Facebook while he was incarcerated at the prison. In April of 2012, FCI-Allenwood special investigations staff discovered Aguiar was relaying messages to unauthorized contacts on Facebook through his sister, with whom he was communicating via the Trust Fund Limited Inmate Computer System ("TRULINCS"), the prison's email system. Special investigations staff notified Facebook that Aguiar was permitting third-party access to his Facebook account in violation of Bureau of Prison ("BOP") policy and Facebook's terms and conditions, and requested that Facebook disable Aguiar's account.

In the amended complaint, Aguiar seeks money damages and injunctive relief on the grounds that various BOP staff at FCI-Allenwood, including Warden Recktenwald ("Recktenwald"), Associate Warden Butler ("Butler"), Captain Bergen ("Bergen"), Special Investigator Supervisor Lyons ("Lyons"), and Special Investigation Staff Technician Cook ("Cook"), (collectively "Defendants"), and an unidentified Facebook employee (the "John Doe Defendant")[2] violated his constitutional rights by improperly imposing

---

[2]Rule 4(m) mandates the dismissal of the claims against the John Doe Defendant because plaintiff has not served the John Doe Defendant with a summons within 120 days of the filing of the complaint. Beckerman v. Weber, 317 F. App'x 125, 128 (3d Cir. 2008); Baumgardner v. Ebbert, 535 F. App'x 72, 77 n.7 (3d Cir. 2013). Although Plaintiff requested an extension of time to serve the John Doe Defendant, (Doc. 33), Plaintiff did not comply with Judge Mehalchick's order to provide more specific information so that service can

disciplinary sanctions on him and directing Facebook employees to disable his Facebook account as a result of his allegedly improper use of TRULINCS. (Doc. 5).

## II. STANDARD OF REVIEW

### A. Report and Recommendation

Where no objection is made to a report and recommendation, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every Report and Recommendation)). Nevertheless, whether timely objections are made or not, the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

---

be effected upon the John Doe Defendant, or to show good cause for Plaintiff's failure to serve the John Doe Defendant, (Doc. 36). As such, the claims against the John Doe Defendant will be dismissed.

**B. Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

## III. DISCUSSION

In their motion for summary judgment, defendants Recktenwald, Butler, Bergen, and Lyons argue that they are entitled to summary judgment because the undisputed record reflects that these defendants lacked personal involvement in the alleged misconduct. (Doc. 60 at 7-11). Defendant Cook argues that she is entitled to summary judgment because Aguiar's constitutionally protected interests were not violated. (Id. at 11-14). Alternatively, Defendants seek summary judgment on qualified immunity grounds. (Id. at 14-21). Plaintiff argues that Defendants violated his First Amendment rights in preventing him from maintaining a Facebook account, and that the prison's actions were not reasonably related to a legitimate government interest. (Doc. 75 at 2). Plaintiff also argues that each of the Defendants had personal involvement as part of the chain of supervisors overseeing Defendant Cook, who was tasked with researching inmates with Facebook accounts. (Id. at 3-4).

### A. Qualified Immunity

As Judge Mehalchick found, Defendants are entitled to qualified immunity because Plaintiff has not demonstrated that Defendants deprived him of his constitutional rights. The doctrine of qualified immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or

5

constitutional right[ ] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533 U.S. 194, 200-01 (2001). To determine whether Defendants are entitled to qualified immunity, the court must analyze two factors: 1) whether the plaintiff has shown facts that make out a constitutional rights violation, and if so, 2) whether those rights were "clearly established" at the time of the incident. Pearson v. Callahan, 555 U.S. 223, 232 (2009).

### 1. Defendants' Actions

Analyzing Defendants' actions in this case, Plaintiff is unable to make out *any* violation of his constitutional rights. The special investigations staff monitored Plaintiff's emails through the TRULINCS system. After discovering that Plaintiff was communicating with unauthorized contacts on Facebook through his sister, the prison issued him an incident report, after which his right to telephone use and commissary privileges were suspended for three months. Then Defendant Cook simply informed Facebook that Aguiar was allowing a third party to administer his Facebook page, resulting in a breach of prison security and violation of Facebook's user agreement. With this information, Facebook independently deactivated Plaintiff's account.

Evaluating each of the actions above, Plaintiff did not suffer an infringement of his constitutional rights. It is well-settled that prisons are allowed to monitor inmates' outgoing non-legal communications. See Caldwell

v. Beard, 305 F. App'x 1, 4 (3d Cir. 2008). In corresponding with Facebook, Defendant Cook did not disclose any of Aguiar's private, confidential information. (Doc. 61-1 at 54). Further, Defendants did not directly close Plaintiff's Facebook account and thus are not directly liable for doing so. To the extent that Plaintiff claims he was improperly punished in the prison's issuance of the incident report and the revocation of his privileges, the incident report was later expunged on technical grounds. Moreover, Plaintiff violated the TRULINCS Statement Program, which does not allow inmates to access the Internet and which prohibits prisoners' correspondence with unauthorized contacts. (Doc. 61-1 at 12, 15). Plaintiff is not allowed to circumvent these policies, of which he was aware,[3] by using his sister as a conduit to the outside world. The record does not reflect that Defendants violated Plaintiff's constitutional rights under the first prong of the qualified immunity analysis.

### 2. Prison Policy

The Third Circuit has recognized a prisoner's First Amendment "'right to communicate with family and friends,' and that e-mail can be a means of exercising this right." Solan v. Zickefoose, 530 F. App'x 109, 110 (3d Cir. 2013) (quoting Valdez v. Rosenbaum, 302 F.3d 1039, 1048 (9th Cir. 2002)).

---

[3]Upon logging into TRULINCS, inmates were required to acknowledge and certify that they were responsible for abiding by all terms described in the BOP's policies regarding use of TRULINCS. (Doc. 61-1 at 22).

Liberally construing Plaintiff's allegations as a First Amendment challenge to an informal prison policy of indirectly restricting inmates' access to social media platforms with email function, Plaintiff still fails to allege deprivation of his constitutional rights. Here, the "critical question" is whether the prison's practice of impeding prisoner access to Facebook "is reasonably related to legitimate penological interests." Solan, 530 F. App'x at 110-111 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). The Supreme Court in *Turner* established a "reasonableness" test to determine whether a prison policy violates inmates' constitutional rights, which requires courts to evaluate: "(1)'whether there is a valid, rational connection between the prison regulation and the legitimate interest put forth to justify it'; (2) 'whether inmates have an alternative means of exercising the right'; (3) 'the burden on prison resources that would be imposed by accommodating that right'; and (4) 'whether there are alternatives to the regulation that fully accommodate the inmate's rights at de minimis cost to valid penological objectives.'" Solan, 530 F. App'x at 111 (quoting Fontroy v. Beard, 559 F.3d 173, 177-78 (3d Cir. 2009)).

Evaluating the *Turner* factors above, first, there is a valid, rational connection between the prison's practice of indirectly cutting off inmates' access to this social media platform and security of the prison and protection of the public. Second, there are multiple alternative means for inmates to communicate with the public, including in-person visits, telephone calls, postal mail, and emails via TRULINCS. Third, permitting inmates to communicate via

third party agents on Facebook would require incredible prison resources to monitor such communications for unauthorized contacts. Fourth, Aguiar has offered no meaningful alternatives to the arrangement, which weighs in favor of the prison's informal policy. Therefore, using the *Turner* analysis, the policy in question did not violate Plaintiff's constitutional rights. See Solan, 530 F. App'x at 110. Under either analysis - evaluating the actions taken by prison officials and evaluating the prison's informal policy as a whole - Plaintiff has failed to demonstrate a deprivation of his constitutional rights, which is the first prong of the qualified immunity test. Because the first prong of the qualified immunity test is dispositive, the court does not reach the second prong. Id. at 110 n.1.

**IV.   CONCLUSION**

In light of the above, the court finds no clear error on the face of the record. As such, the report of Judge Mehalchick will be adopted in its entirety and the defendants' motion for summary judgment will be granted. Further, the claims against the John Doe Defendant will be dismissed. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 30, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-2616-03.wpd